IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

VANMARK STRICKLAND,

    Plaintiff,

v.

AT&T PENSION BENEFIT PLAN,

    Defendant.

No. C 17-01393 WHA

**AMENDED ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

In this action for disability benefits, defendant insurer moves for summary judgment. For the reasons herein, the motion is **GRANTED**.

**STATEMENT**

In essence, the facts are simple. A former employee was denied disability benefits under his former employer's pension plan because he failed to provide proof that he was still eligible to receive benefits. After his appeal was denied, the former employee brought this action against the plan.

Plaintiff Vanmark Strickland worked for AT&T Inc. for more than fifteen years before he became disabled "due to low back pain which radiates to his hip and down his leg to his right foot" (Dkt. No. 38 ¶ 2). He became disabled on June 3, 2013, and as a member and beneficiary of the AT&T West Disability Benefits Program received short-term and long-term disability under that plan up until March 2015 (Dkt. No. 40-1 ¶ 9).

Strickland was then approved for pension disability benefits under the plan at issue, defendant AT&T Pension Benefit Plan, effective June 9, 2015 (*see* AR ATT003513). The AT&T Pension Benefit Plan fell under the AT&T Umbrella Benefit Plan No. 3. Sedgwick Claims Management Services, Inc., operating under the name AT&T Integrated Disability Service Center (IDSC), was responsible for adjudicating claims for disability pension benefits made by participants of the AT&T Umbrella Benefit Plan No. 3 (Dkt. No. 40-1 ¶ 7; Dkt. No. 56-1 at 4). Importantly, the AT&T Pension Benefit Plan stated: "The Plan Administrator will have all powers necessary or appropriate to accomplish its respective duties and obligations including, without limitation, complete and absolute discretion to interpret the Plan and all matters of fact with respect to such duties and obligations" (AR ATT002824).

The AT&T Pension Benefit Plan specified that it would provide benefits until the earliest of six possible or eventual dates, one being "[t]he date the Program Participant is no longer Totally Disabled as a result of [injury] or sickness" (AR ATT003239). In order to assess whether a participant was "Totally Disabled," the participant was required to "provide the Plan Administrator with such information and evidence, and [] sign such documents, as reasonably may be requested from time to time for purpose of administration of the Plan" (AR ATT002838). If the participant failed to submit the requested information, at least forty-five additional days were allowed to provide the information, after which point a "decision [would] be made without regard to the requested information" (AR ATT003292).

On December 22, 2015, IDSC notified Strickland that it would need additional medical documentation by February 15, 2016, in order to determine whether he remained "Totally Disabled" and eligible to receive benefits. Specifically, the letter stated that Strickland needed to provide: (1) a disability questionnaire; (2) an authorization for release of information; and (3) copies of all medical records dating from August of the previous year. The letter further stated that it was Strickland's responsibility to pay any fees charged for medical records, and that he would need to sign and date the authorization for release of information and provide it to his physician and a copy to IDSC. Finally, the letter warned that if this information was not

received by IDSC by February 15, 2016, his claim would be denied for "failure to provide information under the plan/program provisions" (AR ATT003507).

After Strickland failed to provide the information requested in December 2015, IDSC sent another letter dated January 23, 2016, indicating it had sent a previous request and that if the requested information was not received by February 15, his claim would be denied (*see* AR ATT003500). After the passing of that deadline without receiving any documentation from Strickland, IDSC sent him another letter dated March 22, urging him to submit this information as soon as possible (*see* AR ATT003493). Strickland faxed to IDSC the questionnaire and authorization for release of information on April 22 (*see* AR ATT003486–3489).

Missing from this submission was the requested medical documentation.

On April 29, IDSC sent a letter to Strickland denying him benefits effective May 1, in which it noted all previous requests made and explained that "[t]he determination to deny benefits is based on the fact that as of the date of this letter, we have not received any medical documentation to establish your continued inability to perform active service with a Program Employer as a result of sickness or injury" (AR ATT003481). The letter informed Strickland of his right to submit a written appeal within 180 days, advising that he state the reasons he believed his claim should not have been denied, and to submit any "additional medical or vocational information, and any facts, data, questions or comments" he deemed appropriate in order for IDSC to give his appeal proper consideration. Enclosed was a copy of the appeal procedure and appeal form. Strickland was notified of his right to sue once he had exhausted this appeals process (AR ATT0003481–3482).

Strickland filled out an appeal form on May 10, explaining that he was appealing the denial of benefits decision because IDSC "didn't have all of the information requested regarding [his] status and condition" (AR ATT003473). Strickland forwarded this form to IDSC, along with a copy of the authorization for release of information submitted to John Muir Health (AR ATT003472–3473). On May 17, John Muir Health sent a letter to IDSC in which it acknowledged that it had "received your request for the health records of Vanmark Strickland," but stated that it could not comply with the request because while Strickland's authorization

3

was submitted, "a request for records from AT&T is missing" (AR ATT003471). The letter further noted that John Muir Health does not process third-party requests, and that "[i]f the patient is responsible for payment, the patient needs to request the records and records would need to be sent to the patient not AT&T" (*ibid.*). IDSC notified Strickland of this letter and its contents on June 1 (*see* AR ATT003362–3363).

On May 31, IDSC sent a letter to Strickland acknowledging that it had received his appeal on May 25, and would render a decision by July 9 (*see* AR ATT003470). On July 1, IDSC sent another letter, in which it announced its decision to uphold the denial decision due to the fact that it still had not received Strickland's medical documentation. The letter mistakenly referenced the "AT&T West Disability Benefits Program" throughout, while referencing the provision defining "Totally Disabled" found in the AT&T Pension Benefit Plan. It noted that the decision to deny benefits was final, and that Strickland had "the right to bring a lawsuit against the AT&T Umbrella Benefit Plan No. 1, under which the AT&T West Benefits Program is a program" (AR 003465–3466). Strickland subsequently hired an attorney, who requested documents from IDSC (AR ATT003452–3459).

Strickland brought this action against AT&T West Benefits Program to "seek[] review of a failure to extend benefits under a disability plan which may be covered by ERISA" (Dkt. No. 1 ¶ 1). An order dismissed his ERISA claim and adjoining state law causes of action for breach of contract, intentional infliction of emotional distress, and bad faith (Dkt. No. 24). Strickland's amended complaint alleges "wrongful termination of benefits under a plan subject to ERISA" against AT&T Pension Benefit Plan (Dkt. No. 38 ¶ 1). Defendant now moves for summary judgment (Dkt. No. 40).

**ANALYSIS**

**1. STANDARD OF REVIEW.**

Following the Supreme Court's direction in *Firestone*, our court of appeals held that abuse of discretion review is required "whenever an ERISA plan grants discretion to the plan administrator," but this review must be "informed by the nature, extent, and effect on the decision-making process of any conflict of interest that may appear in the record." *Abatie v.*

4

*Alta Health & Life Ins. Co.*, 458 F.3d 955, 967 (9th Cir. 2006). We therefore look to the record to determine the appropriate standard of review. Under the AT&T Pension Benefit Plan, "[t]he Plan Administrator will have all powers necessary or appropriate to accomplish its respective duties and obligations including, without limitation, complete and absolute discretion to interpret the Plan and all matters of fact with respect to such duties and obligations" (ATT AR002824). Accordingly, all of Strickland's arguments as to why *de novo* review should be applied are meritless, contradicted by the unambiguous record and letter of the law. We apply abuse of discretion review.

Abuse of discretion review allows a district court "to tailor its review to all the circumstances before it," and "decide in each case how much or how little to credit the plan administrator's reason for denying insurance coverage." *Abatie*, 458 F.3d at 968. While our court of appeals considered the "level of skepticism with which a court views a conflicted administrator's decision," if, for instance, "a structural conflict of interest is accompanied [] by evidence of malice, of self-dealing, or of a parsimonious claims-granting history," no immediate cause for skepticism arises here. AT&T has delegated authority over plan administration to Sedgwick (operating as IDSC), eliminating any structural conflict of interest (*see* Dkt. No. 40-1, Exh. A).

This order reviews IDSC's decision for abuse of discretion, recognizing that this is a question of law and "the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply." *Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir. 1999).

**2.    IDSC DID NOT ABUSE ITS DISCRETION.**

"Under the deferential abuse of discretion standard of review, the plan administrator's interpretation of the plan will not be disturbed if reasonable." *Day v. AT&T Disability Income Plan*, 685 F.3d 848, 852 (9th Cir. 2012) (citations and quotations omitted). "ERISA Plan administrators abuse their discretion if they render decisions without any explanation, . . . construe provisions of the plan in a way that conflicts with the plain language of the plan, or rely on clearly erroneous findings of fact." *Id*. at 853 (citations and quotations omitted). In

5

light of the criteria established by our court of appeals, and for the reasons stated below, it is clear that IDSC did not abuse its discretion in denying benefits to Strickland.

### A. IDSC Not Responsible for Obtaining Records Under Plan.

Strickland's core argument as to why IDSC abused its discretion in denying him benefits is that in previous years the plan administrator had used Strickland's authorization to obtain his medical records directly from health-care providers, but suddenly IDSC changed policy, instead relying on Strickland to supply these records (*see* Dkt. No. 49 at 1). Strickland cites to signed authorizations dated May 2014 and April 2016 as evidence of this supposedly abandoned practice (*ibid.*). But he does not dispute that the three letters he received prior to denial expressly stated that "IDSC requires that *you* provide [] the information"; "[i]t is *your* responsibility to promptly pay any fees charged for medical records"; and "[i]f all of the requested information is not received . . . your claim will be denied for *failure to provide* information under the plan/program provisions" (AR ATT003507, AR ATT003500, AR ATT003493). Indeed, the plan itself stated that "[a] participant will *provide* the Plan Administrator with such information and evidence, and will sign such documents, as reasonably may be requested from time to time for purpose of administration of the Plan" (AR ATT002838).

In his opposition, Strickland asks: "[I]f the Plan was requiring the plan participant to obtain the records directly, then why would it need the authorization?" (Dkt. No. 49 at 5). The answer is that IDSC did not require Strickland to obtain the records directly. In fact, Strickland sent a signed authorization to John Muir Health, in which he requested that his records be faxed to IDSC (*see* AR ATT003472). While requiring an authorization, the fax transmittal would have eliminated the need for IDSC to do the legwork or for Strickland to obtain the records "directly." Strickland's argument presupposes that IDSC was aware that John Muir Health would not comply with his request. Strickland provides no basis for that assumption, and if there were IDSC still did not abuse its discretion by requiring Strickland to obtain the records himself. Strickland also asks why IDSC didn't contact his physician after it received from John Muir Health "the [May 17] letter refusing to send medical records" (Dkt.

No. 49 at 8; *see* AR ATT003471). But IDSC made Strickland aware of that letter on June 1, giving Strickland time to contact his physician and obtain the records before an appeal determination was made on July 1 (*see* AR ATT003362–3363).

Moreover, Strickland received the first follow-up request for medical documentation in December 2016, just six months after he began receiving benefits under the plan (*see* AR ATT003513, 3507). To the extent that he bases his argument on the administrative procedures throughout his previous short-term and long-term disability plans, these are not at issue and have no bearing on this distinct plan. The language of the plan is clear, and the actions and ultimate decision of IDCS are consistent with its provisions. IDSC did not abuse its discretion by requiring Strickland to obtain and provide his own medical records, or by denying him benefits when he failed to do so.

### B. IDSC Adhered to Procedural Requirements.

Strickland argues that IDSC improperly handled his appeal in two ways. Neither argument has merit.

*First,* Strickland asserts that in its April 29 denial of benefits letter, IDSC "failed to describe what is necessary to perfect the claim, or why the material is necessary" (Dkt. No. 49 at 6). Under federal law, an ERISA plan administrator "shall set forth, in a manner calculated to be understood by the claimant:

> (1) [t]he specific reason or reasons for the adverse determination; (2) [r]eference to the specific plan provisions on which the benefit determination is based; (3) [a] description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such information is necessary; and (4) [a] description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review.

29 CFR 2560.503-1(g)(1)(i)–(iv). Under the Summary Plan Description appears each of these requirements (*see* ATT AR003290-3291). Appropriately, in its April 29 denial letter, IDSC: (1) stated that "[t]he determination to deny benefits is based on the fact that as of the date of this letter, we have not received any medical documentation to establish your continued inability to perform active service with a Program Employer as a result of sickness or injury"; (2) made

7

specific reference to the provision of the plan which defines "Totally Disabled"; (3) explained that it needed the request for updated medical information returned in order to review his claim for ongoing benefits; and (4) explained that he could appeal the decision within 180 days, after which he had a right to sue under Section 502 of the Act (*see* AR ATT003481). Indeed, IDSC followed the requirements set forth in the plan and federal regulations exactly.

*Second*, Strickland claims that in its July 1 denial of appeal letter, IDSC referred to the wrong plan, which "does not operate to foreclose the submission of additional material concerning the denial of benefits under the AT&T Pension Plan" (Dkt. No. 49 at 8). Procedural requirements for appeal determinations closely follow those for initial benefit determinations, *see* 29 CFR 2560.503-1(j), which are also mirrored in the Summary Plan Description (*see* AR ATT003292). Our court of appeals requires "substantial compliance" with the regulatory requirements. *See Chuck v. Hewlett Packard Co.*, 455 F.3d 1026, 1032 (9th Cir. 2006). IDSC strictly adhered to these requirements in its denial of appeal letter, except that throughout the letter it erroneously referred to the "AT&T West Disability Benefits Program" and "AT&T Umbrella Benefit Plan No. 1" instead of the "AT&T Pension Benefit Plan" and "AT&T Umbrella Benefit Plan No. 3." IDSC's letter otherwise correctly included the specific provision of the AT&T Pension Benefit Plan on which it based its denial, and met all of the express procedural requirements (*see* AR ATT003465-3466). It is thus to no avail that Strickland argues that by referencing the wrong plan — a plan from which Strickland had already been terminated in March 2015 — IDSC did not "substantially comply" with these requirements in its July 1 denial of appeal letter, or that he was prejudiced by this harmless error. IDSC plainly did not abuse its discretion in denying Strickland's appeal.

### C. SSA Determination Contrary to Plan.

Strickland relies on *Montour v. Hartford Life & Acc. Ins. Co.*, 588 F.3d 623 (9th Cir. 2009), to argue that IDSC's failure to consider the evidence used by the Social Security Administration in awarding him disability benefits is sufficient grounds to find abuse of discretion (Dkt. No 49 at 9). In *Montour*, our court of appeals reviewed an insurance company's "failure to grapple with the SSA's contrary disability determination," where the insurance

company's contrary determination was made *after* having reviewed the plaintiff's medical records. Here, IDSC had no medical records to review. It based its decision, not on evidence which it could "compare and contrast" with that relied on by the SSA, (*ibid.*), but on a complete lack of evidence which could support a determination that Strickland was "Totally Disabled" under the plan. Absent such evidence, the plan gave IDSC the discretion to make a decision "without regard to the requested information," and the numerous letters Strickland received from IDSC warned that his claim would be denied "for failure to provide information under the plan/program provisions" (AR ATT003292, 3507). IDSC was not required to follow the SSA's determination. *See Madden v. ITT Long Term Disability Plan for Salaried Employees*, 914 F.2d 1279, 1286 (9th Cir. 1990). Strickland's reliance on *Montour* is therefore misplaced, and does not support a finding that IDSC abused its discretion.

### D. Strickland Misinterprets Plan Provision For Correcting Mistakes.

Strickland argues that IDSC "failed either to apply, or to consider applying, a provision of the AT&T Pension [Benefit] Plan which allowed the Plan to correct errors" (Dkt. No. 49 at 2). Strickland claims that IDSC should have done so upon his submission of medical records, *after* IDSC made its final decision to deny him benefits. Specifically, the provision Strickland cites to provides: "Plan provisions to the contrary notwithstanding, if an error has occurred in connection with the Plan, including, but not limited to, an error in determining the amount of a Participant's Accrued Benefit, as a result of human or systems error, data, recordkeeping, or other administrative error, the Plan Administrator may correct the error to the extent reasonably practicable by taking any action it deems appropriate to effect such correction" (AR ATT002838). Strickland self-servingly asks that this provision be applied to a reasonable decision to deny him benefits, a circumstance for which it was clearly not intended. IDSC did not "error" as Strickland suggests, but denied him benefits because it was unable to discern whether he remained "Totally Disabled" and qualified for benefits under the plan. Despite multiple requests, Strickland failed to provide the necessary medical documentation to allow IDSC to evaluate his continued eligibility. IDSC properly denied Strickland's claim "without

9

regard to the requested information" (AR ATT003292). Its decision was therefore reasonable and not an abuse of discretion.

**CONCLUSION**

For the foregoing reasons, defendant's motion for summary judgment is **GRANTED**. The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: February 7, 2018.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE